No. 32.—LEWIS J. GROCE, *pro Ami. &c.*, plaintiff in error, *vs.* RICHARD B. RITTENBERRY, defendant in error.

[1.] Where personal property was bequeathed to S. G., and if he should die without any child living at his death, then to the children of L. G. and J. A.; and S. G. died, leaving his wife *enciente* with a child, which was afterwards born, and lived for some time, but subsequently departed this life : *Held,* that such bequest was in the nature of an executory gift to the children of L. G. and J. A., to take effect upon the defeasance of the prior gift to S. G. : *Held,* also, that for the purposes of this bequest, the child, *en ventre sa mere,* was a child living at the death of its father, S. G.

Lewis J. Groce *vs.* Richard B. Rittenberry.

Trover, in Bibb Superior Court. Tried before Judge Pow-ERS, May Term, 1853.

This was an action for the recovery of a negro, brought by Lewis J. Groce, as next friend of his own minor children, and of Elizabeth Andrews, the minor child of Joseph B. Andrews, deceased, against Richard B. Rittenberry; and the case was submitted on the following agreed statement of facts:

That Ann Groce departed this life in 1848, leaving a will, which was admitted to probate, in which occurs this item: " I give and devise to my son, Solomon J. B. Groce, a negro boy, named Harrison, about ten years of age; and in the event that he should die without any children, I desire and will that the property should go to, and be equally divided between the children of Lewis J. Groce, and Joseph B. Andrews." That the boy, Harrison, went into the possession of Solomon J. B. Groce, until the death of said Solomon, who died, leaving no child born; but that his wife was, at the time of his death, in a state of pregnancy; and that about four months afterwards, a son was born, who died before the commencement of this suit: That defendant is the administrator of Solomon J. B. Groce, and in possession of the boy Harrison; and that the wards of the plaintiff, are the children of Lewis J. Groce and Joseph B. Andrews, named in the will.

After argument, the Court decided, that under the facts of this case, the remainder in the negro Harrison, did not vest in the children of Lewis J. Groce and Joseph B. Andrews, and therefore awarded a non-suit; to which decision, the plaintiff excepts, and says that the Court erred therein, because,

1st. There is no limitation in remainder, in the property aforesaid, either express or implied, created by said will in the child or children of the said Solomon J. B. Groce.

2d. Because by said item in said will, said Solomon J. B. Groce was entitled to an unconditional fee, only, in said property, if he left children him surviving.

3d. Because a child *en ventre sa mere*, is not considered in *esse*, except for purposes of its own benefit.

LANIER & ANDERSON, S. & R. P. HALL, for plaintiff in error.

STUBBS & HILL, for defendant.

*By the Court.*—STARNES, J., delivering the opinion.

[1.] This case arises on the following clause of Ann Groce's will: "I give and devise to my son, Solomon J. B. Groce, a negro boy, named Harrison, about ten years old; and in the event that he should die without any children, I devise and will that the property should go to, and be equally divided between the children of Lewis Groce, and Joseph B. Andrews."

Solomon took the slave and afterwards died, leaving his wife *enciente.* About four months thereafter, she was delivered of a son, who lived for a time; but died before the commencement of this action.

It is agreed that the words used here, viz: "without any children," have reference to children living at the time of Solomon's death; and no difficulty is raised because that these words may not be technically definite.

The only question submitted for our consideration then, is, was the child, which was *en ventre sa mere*, at Solomon Groce's death, in contemplation of law, and for the purposes of this bequest, living at that time?

It is very clear, that wherever there is *remainder* to a child or children, that a child, *en ventre sa mere*, will be held living at the death of the ancestor. This is the law, both in England and this country, and has been so, certainly since the Statute of 10 and 11, William and Mary, chap. 16. It is insisted, however, that by virtue of this Statute, this rule applies only to cases where the bequest is intended for the benefit of the child, and is a remainder to the child. That in all other cases, as where the birth of the child is used only to mark or measure the quantity of the estate, which the father is to take, the rule does not apply. And it is insisted, that the existence of the child, at the death of the father, is in this case referred

to simply, as the measure of the quantity of the estate which he was to take under the will; and that no remainder was limited to the child. That the estate conveyed *quoad* these children of Groce and Andrews was an estate in *remainder*, with diminuent *condition;* and that, at the death of Solomon Groce, without a child *in esse*, the remainder took effect, and vested in them, by virtue of Common Law principles, of force before the Statute of William and Mary.

A very striking and interesting degree of professional talent was displayed by our young brother, who presented this view of his case—an order of talent which, if he chooses, may insure him professional eminence; and what is better, distinguished capacity for usefulness among his fellow men. It cost us no small effort to disentangle what we conceive to be the true distinction in the case, from the ingenious web of his plausible and earnest argument.

We think the position of the counsel erroneous; because, that this bequest cannot properly be called a contingent remainder, or remainder with diminuent condition. Such a remainder relates only to lands, tenements, and hereditaments. This is simply an *executory bequest;* that is to say, an executory gift to the children of Lewis Groce and Andrews, "Made to take effect in defeasance of a prior gift" to Solomon Groce. (2 *Jarm. on Wills*, 76.) See the remarks of the learned commentator, J. W. Smith, upon *Fearne on R.* 50; where attention is called to this correct distinction. Also, *Fearne* 15, 16, 416. The Common Law principle invoked, is of feudal origin, and was intended to be applicable only to Common Law conveyances.

It was never held, that "Executory devises are to be governed by the rules of Law, as to Common Law conveyances," says Mr. Justice Buller, in the celebrated case of *Thelluson vs. Woodford*, 4 *Ves. Jr.*, 327. We may also say, as did this learned Judge, in the case mentioned, that in such bequests, "We are not embarrassed by any quaint rule, requiring a tenant to the *Præcipe*," where the interests of a child, *in ventre sa mere*, are concerned.

The venerable sages of the Common Law, have said that this troublesome nonentity might have an injunction to stay waste; might have a guardian; might take by devise, and under the Statute of Distributions; might be an executor; might be vouched in a recovery to answer over in value: but to be held as a tenant to the *Præcipe!* it could not be. This was too much for the tried patience of these Common Law expounders; and so they shrank from the terrible responsibility of such a doctrine. It is, perhaps, fortunate for us, that, like Mr. Jus. Buller, we are relieved from the embarrassment of this very quaint question. The conveyance in the case before us, is of personal property—is an executory bequest; and we are glad, that in our opinion the law, and the good sense of the case is, that a child *in ventre* should be regarded as a child living at its parent's death, if it were afterwards born alive and capable of living. And this, for the reason given by Lord Hardwick, in *Wallis vs. Hodson,* that a child, *en ventre sa mere,* is a person, *in verum naturae;* and both by the rules of the Common and Civil Law, is " To all intents and purposes, a child as much as if born in the father's life-time." (2 *Atk.* 117.) And any difficulty in regarding it so, in the cases cited, as we think, grew out of those feudal rules, which related to lands, tenements and hereditaments.

It may be said, that the Civil Law here cited, and whose principle is adopted, regarded a child, *en ventre,* as living at the testator's death, only where it was for its own benefit.— (*Domat Prel. B. Tit.* 2, *Sec.* 1, *Art.* 4, 5, 6. *Pt.* 2, *Lib.* 2, *Tit.* 1, *Sec.* 1, *Art.* 6, 7.)

This is true; and if it were necessary, it would not be difficult to show, that technically this bequest must be regarded as for the benefit of the child. Suppose it had lived to this time, would it not appear an exceedingly hard case, that this portion of its father's property should pass away from it to cousins who had no more claims on the testator's bounty than it had, simply because it was not born until four months after its father's death; and would not a construction which prevented this, have been for its benefit ?

However this may be, we find, that in the opinion of those best qualified to advise on this subject, in a case like this, there is no rule of the Common Law which forbids that a child *en ventre*, should be regarded as a child living at testator's death.

In the same case of *Thelluson vs. Woodford*, to which I have already referred, Mr. Jus. Buller says, "In *Doe vs. Clark*, the words, that "Wherever such consideration would be for his benefit, a child *en ventre sa mere*, shall be considered as absolutely born, were used by me, because I found them in the book from whence the passage was taken. But there is no reason for so confining the rule. Why should not children, *en ventre sa mere*, be considered, generally, as if in existence? They are entitled to all the privileges of other persons, &c."

Looking to the view which the Common Law took, (as above shown,) of such children, except in cases where there was some technical obstacle growing out of the peculiar qualities of title to real estate, it would seem legitimate and proper that they should be so considered.

The learned Mr. Jarman, in his Treatise on Wills, in view of the Common Law, and of all previous decisions, says, that "For all purposes of construction, a child, *en ventre sa mere*, is considered as a child, *in esse*." (*Jarman*, 103.) And again, he asserts, that it is "The principle upon which the late cases have proceeded, that a child, *en ventre sa mere*, is for all purposes a child in existence, and even born." (*P.* 104.)

Whether or not we adopt this rule in the full latitude here laid down, we may at all events safely and discreetly hold, that in a case like this, a child, *en ventre sa mere*, will be regarded as a child living at the father's death, if it be born alive, and from sufficient maturity, capable of continuing to live after its birth.

Let the judgment be affirmed.