### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

# AT DECATUR,

## AUGUST TERM, 1855.

Present—JOSEPH H. LUMPKIN, ⎫
EBENEZER STARNES, ⎬ *Judges.*
HENRY L. BENNING. ⎭

---

No. 78.—SARAH A. L. GRISWOLD AND LYMAN GRISWOLD, plaintiffs in error, *vs.* THOMAS R. GREER *et al.* defendants in error.

18  545
99  449
18  545
d110  725
18  545
113  769

[1.] A bequest of property by a testator to his wife, S L G, for life; and if his daughter M *should be dead at the death of her mother*, S L G, *without is- sue, or afterwards die, leaving no issue, then to the children of T and J M and J G*, gives to M a *contingent* and not a *vested* interest; .and at any period before the death of the mother, leaving M without issue, the children of T and J M and J G, may maintain a bill against S L G, praying a stay of waste, &c.

[2.] The words, *should she afterwards die, leaving no issue*, must, in this · State, be construed to import a failure of issue *at the death*, and not *an in- definite failure of issue.*

In Equity, in Coweta Superior Court. Demurrer. Decided by Judge BULL, September Term, 1854.

This bill was filed by Thomas R. and John Greer, and Thomas R. as the next friend of Sarah A. Greer, heirs of William D. Greer, deceased, against the plaintiffs in error. The bill alleges that Gilbert D. Greer died, having first made his last will and testament, in which were the following items :

"*Item* 1st. After my decease, it is my desire that my body be decently buried ; that my funeral charges and just debts shall be paid by my executor hereinafter named.

*Item* 2d. It is my wish that my daughter, Mary W. Hill, shall, immediately upon my decease, take into her possession and in judgment to her and her heirs, absolutely, the five following named negroes, &c.

*Item* 3d. It is my will and desire, that my wife, Sarah A. L. Greer, shall have, absolutely, to her and her heirs, and independently of any bequest or devise hereinafter made, the following named negroes, &c.

*Item* 4th. I furthermore bequeath and devise to my said wife, for and during her natural life, the whole of the residue of my estate, both real and personal, not hereinafter disposed of, comprising the remainder of my negroes, my homestead and all other lands, plantation utensils, stock, wagons, carts, family carriage, provisions, household and kitchen furniture—to remain and be kept together, used and enjoyed by my said wife, in the same way as though I were living. And at the death of my said wife, it is my will and desire that the whole of the above mentioned residue of my estate result to and vest, absolutely, in fee simple, in my daughter, Mary W. Hill, if then living, and her issue, if any ; but if my said daughter should, at that time, be dead without issue, or afterwards die, leaving no issue, then and in either of said events, it is my desire and will that the said residue of my estate, as above mentioned, at that time remaining, be equally divided

among the lawful children of Thomas and Jane Mangham, deceased; the lawful children of James A. Greer, deceased; the lawful children of Wm. D. Greer, deceased, and the lawful children of Nathaniel H. Greer, who is now living.

*Item* 5th. I furthermore give and bequeath my beloved wife, Sarah A. L. Greer, after the payment of all my just debts aforesaid, to be used and enjoyed by her as she pleases, without accountability, all my crop of cotton on hand, cash on hand, notes, bonds, accounts, money demands of every description, that may be and are owing to me at the time of my death."

A. B. Calhoun was named as the executor, who refused to qualify, and administration, with the will annexed, devolved upon Hillsberry R. Harrison, the Clerk of the Superior Court of Coweta County.

The bill alleges that Mrs. Greer took possession of the cotton, notes, accounts, &c. as well as all the property bequeathed to her in the 4th item of said will; that the aggregate value of the personal property was $18.000, exclusive of the ready money, notes, accounts, &c.; that the value of the crop of cotton (sixty-five bales) on hand at the time of testator's death, was $2.500; and that Mrs. Greer sold it for that or some other large sum; that the grain on hand, over and above the necessary quantity for use, was worth $500 00. The bill charges that by the 1st and 5th items of said will, the proceeds of the cotton and grain should have been applied to the payment of the debts of testator, but that Mrs. Greer had appropriated the same to her own use, while the administrator had been compelled to sell four of the negroes included in the residue of the estate, mentioned in the 4th item of the will, to pay off debts against the estate—Mrs. Greer becoming the purchaser of one of said negroes at the price of $1000. The bill charges that Mrs. Greer had exchanged or swapped off one of the negroes included in the 4th item of the will, worth $1000, for another negro, of what value complainants cannot say.

The bill states that since these transactions, Mrs. Greer has intermarried with one Lyman Griswold, and that they are in the joint possession of the property.    The bill charges that the said Lyman is a stranger in the community; that rumors affecting his character for integrity are in circulation, and that his object in marrying Mrs. Greer was to get possession of the property, and that complainants believe and apprehend that he will remove the property beyond the jurisdiction of the State.

The bill further states, that Mrs. Mary W. Hill has been married for a long space of time, and that she is barren; has had no issue, and complainants believe never will have any children.    Complainants state that they are the children of William D. Greer, mentioned in the 4th item of said will.

The bill prays for a writ of injunction to restrain the defendants from wasting and disposing of said property—a writ of *quia timet*, to restrain them from removing the property—to which is added a general prayer for relief.  ·

To this bill, the defendants filed a general demurrer.

The Court over-ruled, and defendants excepted.

SIMMS & HAMMOND, for plaintiffs in error.

WRIGHT & BUCHANAN, for defendants in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The defendants in error are entitled to the relief which they seek, although, in the use of the words which he has employed, the testator may have looked to an indefinite failure of issue in the line of his daughter, Mary. W. Hill.

The words material to be considered, in the fourth clause of the will are, "if my said daughter should at that time be dead" (the period of his wife's death, to whom he had given a life estate in the property,) "without issue, or afterwards die leaving no issue, then, and in either of said events, it is my desire and will that the said residue of my estate, at that

time remaining, be equally divided among the lawful children of Thomas and Jane Mangham, deceased, the lawful children of Jane Greer, deceased," &c.

It will be perceived, that according to these terms, the testator did not intend that any estate in this property should vest in his daughter, if she died before her mother, without issue. This will be admitted, whatever construction may be put upon the other words, "or afterwards die leaving no issue."

Now, let it be admitted, that in the use of these latter words, he looked to an indefinite failure of issue, (as is insisted,) and that so far as this feature of the will is concerned, the effect of these words being to create an estate tail, or perpetuity, an absolute fee simple estate in the property is vested in the daughter, should she survive her mother. Yet, it is apparent that no estate can unconditionally vest in her before her mother's death, for the provision is, that if she should die before her mother, without issue, the property is then to pass to the defendants in error. The record shows that the mother is still living, and that the daughter has no children. If she should thus die before her mother dies, of course the clear and definite provision in favor of these defendants in error, dependent upon this event alone, will take effect. It follows, therefore, that the interest of the daughter, Mrs. Hill, or of her estate in this property, is in the nature of a contingent remainder—a remainder resting upon the condition of her surviving her mother with issue.

A contingent remainder is one which is limited to take effect on an event or condition which may never happen or be performed, or which may not happen or be performed until after the determination of the preceding particular estate. Here, as we have said, the interest of Mrs. Hill is limited on an event which may never happen, viz: the death of her mother before herself—she having issue.

These considerations make it quite clear that the interest of Mrs. Hill in this property is not a *vested* interest, and that in one point of view, these defendants in error have

such an interest over, as cannot be affected by the terms which may be supposed to contemplate an indefinite failure of issue in the line of Mrs. Hill.

If she survive her mother, and a question arises between her, or those claiming under her, and these defendants in error, as to the degree of interest taken by her, this will be determined by the other question, whether or not, in the use of these words, the testator contemplated an indefinite failure of issue. But if she should not survive her mother, and leave no issue, such question cannot arise; and the interest over, of these defendants, will be undisturbed by any such inquiry. As a consequence, the defendants in error have a clear and settled right to come before the Chancellor and pray, that waste of this estate (which, if one event happen, will certainly be theirs) shall be stayed.

[2.] The view of the case which we have presented, has proceeded upon the admission, that the words used by the testator did contemplate an indefinite failure of issue in his daughter, and would, in consequence, vest in her an estate in fee simple, if she should survive her mother. But it is not, in fact, our opinion that such is the effect of these words.

The language is: "But if my said daughter should, at that time, be dead without issue, or afterwards die, leaving no issue, then," &c.

The construction of such words as these, viz: "or afterwards die, leaving no issue," in the Courts of England, for a great length of time, has been, that as to real property, they import *an indefinite failure of issue;* but in conveyances of personal estate, it has been held that the word *leaving* modifies the other expressions, so that they mean only a dying without issue, *at the death* of the first taker.

The natural and legitimate signification of such words, imports a failure of issue *at the death*, and not at any indefinite time thereafter; and we believe and we think we have shown, in the case of *Harris, administrator, vs. Smith, administrator,* (16 *Ga. Rep.* 545,) that the conventional or artificial construction which the Courts of England have adopted,

and which has been followed frequently in this country, is not made necessary by the Statute, commonly called the Statute *De Donis*, *&c.*; which Statute is referred to by our Act of 1821, as the exponent of such terms as serve to create an estate tail. We believe that the reasons for this construction found their origin in feudal influences, and the interests of the heir at law in England; that such reasons do not exist in our State, where there is, technically, no heir at law, and where estates tail are prohibited; and that the reasons failing, the rule of construction founded upon them by the Courts, should cease.

But for our opinion on this subject, in full, see the case of *Harris vs. Smith*, above cited.

Judgment affirmed.