FORMAN *et al., vs.* TROUP *et al.*

1. By the will of the late Governor Troup, he directed that his executors keep his property together for three years, giving to the heirs in the meantime a decent and becoming support. "At the expiration of three years, and on the first day of January next thereafter, he desired that all of the property, of which he died possessed, with the increments, both real and personal, be divided as nearly as possible into three equal shares. I mean specifically, one share for the children of Florida, one share for Oralie, and one share for George M. Troup, who are to have, and to hold the same to them respectively, their heirs and assigns forever with these exceptions, viz: If Oralie should die without legal lineal heir or heirs, then shall her share go to the children of Florida, to be equally divided among them, or the survivors ; and if George should die without legal lineal heir or heirs, then shall his share descend to the children of Florida likewise, or the survivors." *Held,* that upon the death of George M. Troup, without legal lineal heir or heirs, the one-third share of his father's estate bequeathed to him, vested in the children of Florida, his sister.

Decision on Demurrer at April Term, 1859, of Chatham Superior Court, by the Hon. WILLIAM B. FLEMING.

Mr. Justice Lumpkin states the facts of the case in his opinion.

LOYD, JONES, JACKSON and WARD, for plaintiff in error.

LAW & BARTOW, for defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

I have no difficulty whatever in arriving at the conclusion that the devise over in this will is good. Viewed either in the light of our own legislation, or by the technical rules of Westminster Hall, there is no legal obstacle in the way of the manifest intention of this testator.

According to the English decisions this is not a limitation void under the rule against perpetuities. Let us examine it for a moment. The devise to the children named "who are to have and to hold the same to them respectively, their heirs and assigns forever," would give each a fee simple.

But it does not stop there, the condition is annexed at once "*with these exceptions.*" And what is the exception ? " If Oralie should die without legal lineal heir or heirs, then shall her share go to the children of Florida, to be equally divided among them or the survivors; and if George should die without legal lineal heir or heirs, then shall his share descend to the children of Florida likewise, or the survivor." According to the English Courts this condition makes it manifest that the "lineal heirs" of these devisees are objects of the testator's bounty, as well as Oralie and George, and that upon the *indefinite failure* of such lineal heirs, he desires the property to go over. To effect this double purpose, the English Courts curtail the fee-simple flowing from the words " heirs and assigns," and by implication give the first taker a fee-tail, the first being easily alienable to the defeat of the heirs, and the latter much more difficult of alienation. Thus the first intent in favor of the heirs is promoted. But if it was construed a fee-simple, the limitation over would be an executory devise, and as it is limited on an *indefinite failure* of issue, the limitation is too remote, and that intention is defeated. On the contrary, holding it an estate-tail, the limitation *becomes a contingent remainder* upon the determination of the fee-tail, and *is good.* Thus both intents are carried out by curtailing the fee-simple to a fee-tail. It is true that the tenant in tail could defeat both by docking the entail, but if (as in this case), he dies without doing so, the remainder over is good. For mark: when a grantor conveys an estate-tail, he does not part with the entire fee. There remains in him a reversionary interest upon the happening of a certain event, viz: the failure of a tenant in tail. That may happen in the second or fortieth generation, but whenever it does happen, the estate reverts, and no rule against perpetuity interferes. Well, this reversionary interest he may devise, and it then becomes a contingent remainder in the devisee. In the English Courts then, regardless of the superadded words, this limitation over would be held a valid remainder: *Doe ex dem., Ellis vs. Ellis,* 9 *East.,* 382 ; *Lewis on Perpetuities,* 177, 178 ; 1 *Jarm.,* 487, *and authorities cited by them.*

But the Statute of 1821 converts an estate-tail in Georgia into a fee-simple. How affects it this question ? Upon this Act of 1821, I would remark, that in the case of *Gray vs. Morrison,* 20 *Ga.,* I dissented from my then associates on

VOL. xxx—33.

this Bench, because they sought by a literal construction of
that Act to give to it an effect never enforced by the Courts,
and never dreamed of, in my judgment, by the Legislature.
Now if we *adhere to the letter* of that Act, it converts into a
fee-simple only an *express* estate-tail. It has nothing to do
with estates-tail by *implication,* for they were not the crea-
tures of the statute *de bonis,* but of the construction of the
Court. If I was disposed thus to stick on the bark, I could
dismiss the Act of 1821, as having nothing to do with this
question. But such is not my view of this Act. I look
upon it as one of a series of statutes passed by our State,
and indicating clearly her settled policy : First, that there
shall be no entailments of estates in families, so as to pre-
vent the free alienation thereof; and secondly, that avoid-
ing this evil, the wishes of testators as to the disposition of
their estates, should be fairly carried out, instead of being
thwarted by technical rules suggested by, and adopted for
the benefit of English proprietors. This latter branch of
State policy I conceive as culminating in the Act of 1854,
(*pamp.* 72), which swept away at one blow all the mass of
legal lore on limitations and perpetuities, over whose ruins
Chancellor Kent wept, as it fell before the ruthless invasion
of the revised statutes of New York. Now, it would be a
most remarkable consummation of the efforts of our legisla-
tors, if the Act of 1821 is to be invoked always to defeat,
rather than to promote the wise purposes for which it was
enacted ; and it would be a sight equally as remarkable, if
the Courts of this State held down the Act of 1854 to the
phrases enumerated therein, regardless of the clearly ex-
pressed intention of the Legislature, to put an end to the
murder of men's wills, by imputing to them an intention of
violating a law which they respected, by creating an estate of
which many of them never heard.

I should not attach much weight to these last words, if
they stood alone; but taken in connection with the former
words, they show, to my mind, clearly, that the testator was
looking to a period within the lives of some of Mrs. Bryan's
children then living, and no farther:

But a devise on failure of issue *within a life in being,*
and 21 years is good : *Fearne on Rem.,* 468, *side page.* It
need not be at the death of the first taker.

But even if all this reasoning is bad, yet, our Act of 1854

seems to me conclusive.  Look at it by the old rule of construction—the old law—the mischief and the remedy.  The old law was, that a devise over on failure of issue should be construed an indefinite failure.

The mischief was, that by this technical, artificial, and unreasonable rule  men's intentions were continually frustrated and legatees deprived of what was justly theirs.

The remedy was, to cut up by the roots the rule referred to, as Parliament had done in 1838, and the Legislature used as broad words as they could to effect it.   It is quibbling to say that " lineal heirs" is not an equivalent term to "issue." The mischief in both cases is the same, and the same remedy applies. ·

For myself, I shall never consent to such a construction of either the Act of 1821 or 1854.   And of all men, never would I impute such an intention to violate the laws of his State to a man who loved her, and  every letter of her laws, and every inch of her soil with an energy and devotion that no soul could inspire but that of George M. Troup.

There are in this will several superadded words which, in my opinion, would of themselves relieve it of all difficulty, if difficulty existed.   In 8*th Georgia,* I announced that, for myself, the limitation to "survivors" would always rebut, in my mind, an indefinite failure of issue.   In *Gray vs. Morrison,* 20 *Ga.*, I adhered to that opinion, and  dissented from a majority of the Court.   I refer to that opinion for the reasons which subsequent reflection has only strengthened.

The provisions for an " equal division " of the estate among the surviving children of Florida, in this  case, confirms the construction which  makes the  testator look to the failure of issue at the death of  Oralie and George.

The demurrer should be sustained and the bill dismissed.