## Matthews *et al. vs.* Hudson *et al.*

A devise made in 1854, by a mother to a trustee for her son, and if the son should die without a child or children, the trustee to sell and make an equal distribution of the proceeds of sale, and place the same in the hands of another trustee for the other children of testatrix, created in the son a fee, determinable upon his dying without a child or children, and the other children were intended to take by executory devise and not by contingent remainder, and no remainder was created by implication in the child or children of

the son. It follows that neither of these classes can interfere during the lifetime of the son to prevent him from committing waste upon the devised premises.

July 12, 1888.

Wills. Estates. Devises. Remainders. Before Judge HINES. Jefferson superior court. November adjourned term, 1887.

A bill was filed by a son of J. C. Hudson, a son and heir at law of Elizabeth Matthews (who is dead), and a son and heir at law of Sarah Whigham (who is dead), against J. C. Hudson, J. J. Milton and A. C. Taylor, alleging that complainants were grandchildren of Penny Hudson, who died testate in April, 1854; that by her will, which was probated in solemn form, Moses Brinson and J. C. Hudson were appointed executors and duly qualified as such; that the testatrix left surviving her, as children and heirs at law, J. C. Hudson, Elizabeth Matthews (formerly Hudson), Jane Farmer (formerly Hudson), Caroline Clark (formerly Hudson) and the children of Sarah Whigham (formerly Hudson), deceased; that by the third item of the will, testatrix devised to Moses Brinson, in trust for her son, J. C. Hudson, a certain tract of land, and provided that if said Hudson should die without leaving a child or children, the trustee should sell the land and make an equal distribution of the proceeds, to be placed in the hands of a trustee of her other children, to be managed as directed afterwards in the will; and in the fifth item it was provided that if J. C. Hudson should die without child or children, the proceeds of the sale should be placed in the hands of the trustee for her daughters, in trust for them and their children and a son of her deceased daughter, Sarah Whigham, the title to remain in the trustee for said daughters and daughters' chil-

·dren; that since the death of Penny Hudson, J. C. Hudson has had uninterrupted use and enjoyment of the land mentioned; that the manifest intention of the will was to convey the title to Brinson as trustee, to be held in trust by him for the use of J. C. Hudson during his natural life, and if at his death he left a child or children, the land was to vest in fee simple in such child or children, and if he died leaving no child or children, the land was to go to the daughters of testatrix or their legal representatives,—in other words, the legal title was vested in Brinson as trustee; Hudson had a life estate, and complainants have a contingent remainder interest which will become determined and vested on the death of Hudson; and should complainant Hudson (who is the son of J. C. Hudson) survive him, then the land will descend in fee to such complainant and such other children of J. C. Hudson as may survive him; but should J. C. Hudson die without leaving any child or children surviving him, then the fee simple title will vest in the other complainants and other children of the deceased daughters of Penny Hudson; that complainants' contingent remainder interest is being greatly damaged by the conduct of J. C. Hudson; that the trustee is dead and the trust unrepresented; that since the death of his mother, J. C. Hudson claims that he holds the fee simple title, and has sold off large parcels to his co-defendants, who are committing acts of irreparable waste on the land, have erected a steam saw-mill and are cutting and felling timber, which is one of the greatest elements of value of the land; that complainants have remonstrated with defendants, who refuse to desist and say they have an absolute title and ·right to use the land as they please; that the loss inflicted is at the rate of $2 a tree for heavy pine timber and injury to the land at the rate of $4 per acre.

Certain questions were propounded to defendants as to the amount of damage done and the amount of land sold. The bill prays that the court will construe the will and by its decree determine and settle the complainants' rights; that the trust may be filled; that defendants may be required to account for damage done; and for the writ of injunction.

The bill was demurred to on the following grounds:

(1) There is no equity in the bill.

(2) The will does not create a life estate in J..C. Hudson, with remainder to complainants or any of them.

(3) The will creates a fee simple title in J. C. Hudson, which may be divested upon his dying without leaving any child or children surviving him.

(4) No possible right has accrued to complainants or any of them, nor can any such right accrue until after the death of J. C. Hudson.

(5) The bill is multifarious, in that complainants' claims are different and really conflicting.

The demurrer was sustained and the bill dismissed; and the complainants excepted.

R. W. CARSWELL and WHIGHAM & HUDSON, for plaintiffs.

CAIN & POLHILL, for defendant.

BLECKLEY, Chief Justice.

The will does not expressly limit the son's interest, as beneficiary, to his life, nor is anything appointed for the trustee to do except to sell, distribute the proceeds and pay them over to another trustee in case of the son's death without child or children. No power of sale or management is conferred on the trustee, to be exer-

cised during the life of the son, and the trust was to become active in the one event only, that is, death without child or children. The devise, legally speaking, as to the measure of the estate taken by the son, is not materially different from what it would have been if no trustee had been interposed, but the gift made directly to the son and then to the other children of the testatrix on the contingency mentioned. The trust has no significance in measuring the estate, but is virtually a power of sale, etc., exercisable alone on the given contingency. In case of death with children, the trustee will have as little to do after death as before, that is, nothing whatever. The testatrix appointed a trustee and invested him with the formal legal title, so that he might appear on the scene for the execution of a specific power if a certain contingency happened. Upon the happening of that contingency, and in that event only, was the fee in behalf of the son to be defeated. The devise was in trust for him, not merely for his use and enjoyment, but the title was put in the trustee for him, without any limit as to time, save on the single condition of death without immediate offspring. Should he die with such offspring, there would be nothing to cut down, reduce or determine his estate in the property.

The contention is, on the part of the complainants in the bill, that the son took but an estate for life, with remainder to his children, if any, and if none, then the remainder went over to the other children of the testatrix. Estates by implication are not favored, and the supposed remainder in behalf of the son's children rests wholly on implication. The implication in this case is a possible but not a necessary one, for the terms of the will are quite as consistent with an intention on the part of the testatrix to give the absolute fee to her son in case he had children, as to give a life estate only with

remainder to such children.   There was on her part no want of confidence in the intelligence, discretion and virtue of the son, for she not only, in another part of the will, gave to him directly and absolutely slaves and other personalty, but constituted him the trustee for her other children ; and it would be to his successor in this trust that his own trustee would have to account for the proceeds of the land in question in case he had to administer it by reason of the son's dying childless. The beneficiary of the first trust (the son) was appointed trustee to take and hold the testatrix's bounty to the beneficiaries of the second trust, her other children. Whilst she constituted another trustee for him as to this land, she constituted him trustee for her other children as to what she gave them out of her estate, including, according to the letter of the will, their contingent interest in the proceeds of this land ; but of course, as he would be dead before this interest could vest, if it ever vested, she did not expect him, but his successor, to receive the proceeds of the land from the son's trustee in case the executory devise took effect.   Can it be surmised with any degree of probability that a mother who could trust her son, not only to take without restriction slaves and other personalty under her will, but to represent her other children in a fiduciary capacity, intended not to trust him to provide for his own children in his own way, if he should have children ?   And this is the very hinge of the case.   Did she trust him to provide for them, or did she intend to provide for them herself by an implied limitation of his interest in this land to an estate for his own life, and by an implied remainder in fee to them after his death ?   If provision for his children was her purpose, there is a strong probability that she would have expressed it, and not left it to implication.   It is plain that she was not swayed by a de-

sire to keep this particular land in the family; she did not devise it specifically to her other children on the contemplated contingency, but directed a sale of it and a division of the proceeds. Had she intended it or its proceeds to go, by way of remainder, to her son's children, would she not also have directed a sale and division in their behalf, or else have said that the land itself and not its proceeds was to be theirs. Mark that the devise over is not of the land, but of the proceeds of its sale; the identical property given to the son is never to reach the other children of the testatrix or their trustee, but only the money which it brings when sold. If there is a remainder created for the son's children it is in the land, and if a remainder over, it is in a different thing, the fund produced by a sale of the land.

Independently of the special features of this will to which we have called attention, there are several cases in our reports which tend to show that on general principles this devise creates a base or qualified fee, and not an estate for life with contingent remainders. *Hill vs. Alford*, 46 *Ga.* 247; *Harris vs. Smith*, 16 *Ga.* 545; *Gibson vs. Hardaway*, 68 *Ga.* 370; *Groce vs. Rittenberry*, 14 *Ga.* 232.

Though not read or cited in the argument, our attention has since been called to *Wetter vs. The United Hydraulic Co.*, 75 *Ga.* 540, a case which, at first view, seems directly in point, and the devise construed is apparently in some respects stronger for a base fee than the one now under consideration, yet the court held that only a life estate was created in the first taker, and that the subsequent limitation implied a contingent remainder in favor of children, with remainder over in the event that failed. But the will involved in that case was made in 1839, when the old law prevailed both as to marital rights and sole inheritance by the husband, and the

legatee, then an infant, was the daughter of the testa-
trix, and by the will took the whole of her estate, real,.
personal and mixed.    She afterwards married, and died
leaving children, who claimed the property in contro-
versy, under the will, as devisees in remainder.    By that.
will the infant daughter, on attaining majority, was then
to become the absolute owner of all the mother's estate,
to have and hold the same, " and her heirs forever."
Custody and control of the estate were, in the meantime,
given to the executors for her use and benefit.    If she
died leaving no issue or lineal heirs, the whole estate
was to go and belong to the mother and sister of testa-
trix, as tenants in common, and their heirs forever; and
should the daughter survive them and die without issue
" as aforesaid " then living, the whole estate was to vest
in the next of kin of testatrix then living, and their heirs
forever.    The executors were authorized to assume and
exercise the necessary and lawful trust "herein pre-
scribed" as to custody of the estate, and at their discretion
to sell the same, or any part, to vest the proceeds in
stocks, and to transfer the same to the daughter at major-
ity, or to the mother and sister, or other heirs after the
daughter's death without issue or lineal heirs then liv-
ing.    Such was that will, and that it presents a very pow-
erful case in favor of an estate in fee, defeasible on the
contingency of death without leaving children, cannot be
doubted or denied.    I need not pass in review the rea-
sons which the court gave for deciding otherwise, but
those which present themselves to my own mind are
briefly these:    The legatee was an infant, and whether
she would have capacity to provide by marriage contract,
discreetly or judiciously for her offspring, or even for her-
self, the testatrix did not and could not know.    If she
failed so to provide, her fortune, both as to her and her
children, would be at the mercy of her husband, who by

reducing it to possession would own it all. Should he not do this, he would, in case of her death during the coverture, be her sole heir at law, and as such take it all, unless she died testate, which could not happen without his consent. In the face of these legal possibilities, it would be rational, if not necessary, to imply a remainder in behalf of the daughter's children. None of the reasons here indicated are operative in the present case, in which a son and not a daughter was the immediate object of the mother's bounty. Though his age is not disclosed by the bill (and on the bill alone was the judgment we are reviewing predicated), he had reached years of discretion, and the mother's confidence in his discretion was manifested by appointing him trustee for her other children. His marriage would not result in clothing his wife with his rights of property; he could make a will without her consent, and on his death intestate leaving children, she would not inherit his whole estate, but take only dower or a child's part in realty, and a child's part in personalty. Such, to say nothing of other distinctions, are the differences between the two cases in respect to causes for imputing to the testatrix by mere implication an intention to provide for grandchildren by way of remainder. Certainly, the general rule is that a devise or bequest to a child, though followed by a contingent limitation over, is not to be construed as a direct provision for grandchildren, unless so expressed, but as means to enable the child to provide for his own children in a way suitable to himself. Unless some sufficient reason appears why this latter object alone, or with others, is not to be supposed, it is not sound construction to attribute to the testator an object which he has not declared. Whilst, if *Wetter vs. The United Hydraulic Co.* is a sound adjudication, there may be some doubt as to the correctness of our ruling, we think the

judgment denying the injunction in the present case ought to be affirmed. It is conceded that if Hudson took a fee of any sort he is exempt from the supervision of chancery in respect to waste, and such undoubtedly is the law. We think he took a qualified fee.

Judgment affirmed.