PRINTUP et al. v. HILL et al.

(Circuit Court, N. D. Georgia. January 28, 1901.)

**1. DEED—ESTATE CREATED—DEFEASIBLE FEE.**

A deed conveyed real estate for the sole use of M. "and her heirs, and, in default of issue on the death of said M.," then to others. *Held*, that under the law of Georgia, where the property was situate, such deed did not create an estate tail, nor a life estate in M. with remainder over, but a fee-simple estate in M., determinable upon the contingency of her death leaving no living issue; and that since, under the laws of the state at the time the deed was executed therein, a fee could not be limited on a fee, the conditional limitation over was void, and M. was vested with the estate in fee simple absolute.

**2. JUDGMENTS—PERSONS CONCLUDED—DECREE ESTABLISHING LIEN FOR TAXES.**

The beneficial grantee in a deed which was made to a trustee during her minority brought suit to recover the property from one to whom the trustee had sold and conveyed it under an order of court. The conveyance was held void, and the plaintiff was given a decree for the property, subject, however, to a lien thereon in favor of the defendant for taxes paid. The plaintiff failed to pay the amount, and the property was sold therefor under the decree. *Held*, that since, under the statute (Pol. Code Ga. 1895, § 778), the taxes were a lien on the property without regard to the condition of the title, the sale was valid and conveyed a good title, not only as against the plaintiff, but, conceding her to have been a life tenant only, as against the remainder-men also, although they were not parties to the suit.

In Equity. Suit to remove cloud from title. On demurrer to bill.

J. Branham and King & Spalding, for complainants.
Wright & Ewing and King & Anderson, for defendants.

NEWMAN, District Judge. This is a bill filed to remove an alleged cloud upon the title to certain lands in the city of Rome, in Floyd county, in this state. The cloud grows out of a claim on the part of the defendants, who are brothers and sisters of Mary A. E. R. Hill, that they are remainder-men, and that after the death of the said Mary A. E. R. Hill the property in question will belong to them. Complainants claim that said defendants have no interest in the land, either now or in the future. The bill is demurred to, and a statement, therefore, of the facts contained in the bill, will show how the questions to be determined arise.

On the 23d day of January, 1857, William R. Smith, of Floyd county, Ga., made and executed a certain deed of conveyance whereby, for the love and affection which he entertained for Mary A. E. R. Perkins, daughter of James P. Perkins, the son by marriage of said grantor, and of five dollars, the said Smith conveyed to James P. Perkins, as trustee for his oldest daughter, Mary Ann Elizabeth Reubena Perkins, the tract of land in controversy. The language of the deed which gives rise to this contest is as follows:

"The said William R. Smith hath bargained, sold, given, and conveyed, and doth hereby bargain, sell, give, and convey, unto the said James P. Perkins, trustee as aforesaid, for the sole use of the said Mary A. E. R. Perkins, daughter of said James P. Perkins, and her heirs, and, in default of issue on the death of said Mary A. E. R. Perkins, then the other children of said Perkins in common, if any, to share and share alike. If none, then in trust, to said James P. Perkins. The trustee to be appointed by the court of law, never to be subject to his (the said James P. Perkins') debts or liabilities in any manner whatsoever, and, in case of the death of all the heirs hereinbefore mentioned, to revert to said William R. Smith forever."

Mary A. E. R. Perkins is the same person who is named as a defendant herein under the name of Mrs. Mary A. E. R. Hill, she having many years ago intermarried with one H. B. Hill, who is now dead, and the said Mary A. E. R. Hill is a widow. At the January term, 1861, of the superior court of Floyd county, James R. Perkins obtained an order upon a petition filed by him for the purpose, authorizing the sale of the property in dispute. To this proceeding Mary A. E. R. Hill (then Perkins) was not made a party, nor in any manner brought before the court, nor were there any other parties thereto except the trustee. At this time the said Mary was a minor. On the 25th of August, 1865, James P. Perkins, as trustee for the said Mary A. E. R. Perkins, made and executed a deed of conveyance to Daniel S. Printup, of Floyd county, wherein, by virtue of the decree of Floyd superior court granted upon the proceedings aforesaid, he undertook to sell and convey to Printup, his heirs and assigns, in fee simple, the property in question, and the said Mary A. E. R. Perkins indorsed on this deed her full and free consent for the sale of the property above set forth, and obligated herself to confirm the sale whenever necessary, executing this consent and affirmance under her hand and seal before two witnesses, one of them being the ordinary of Fulton county. Report of this sale was made to the January term, 1866, of the superior court of Floyd county, and thereupon, by consent of all parties, as evidenced by their signatures, said deed was approved and confirmed by the court, and was entered upon the minutes of the court, and Printup thereupon went into possession of the property by virtue of this conveyance. In May, 1871, Mary A. E. R. Hill and her husband, H. B. Hill, filed their bill in the superior court of Floyd county against Daniel S. Printup to set aside this sale of said property, made by Perkins, trustee. The bill set up the proceedings in the superior court of Floyd county at the January term, 1861, and the order of confirmation, and alleged that, at the time of granting each of these orders and making the consent to the deed, the said Mary was a minor; that she was not made a party in any manner

to the proceedings had before the court, and that Printup had purchased with full notice of all these facts; and that the proceeds of the sale of the property were squandered by the trustee, and not applied to the use and benefit of the cestui que trust. By amendment to this bill, at the January term, 1874, the plaintiffs alleged that Printup had allowed the property to be sold for city taxes due the city of Rome for the year 1873, and had bought in the same, and taken a marshal's deed to the property, and tendered the taxes and offered to redeem the property therefrom, alleging that Printup had caused the assessment of the property against him to be changed to an assessment against said Perkins, trustee, and had purchased the property as the property of Perkins, trustee. After demurring to the bill, Printup answered the same, setting up the validity of his title acquired under the proceedings in the superior court of Floyd county, and the deed made by Perkins, trustee, in pursuance of the order of court, alleging that the decree was properly made, and was to the interest of the trust estate, in that the property was unproductive. He denied all collusion between the trustee and himself, denied that the proceeds were used and squandered by the trustee himself, but alleged that the same were reinvested and used for the benefit of the cestui que trust, and set up that the cestui que trust had received other property in lieu thereof and in full satisfaction of the property then held by Printup. He denied all knowledge of intemperance, etc., on the part of the trustee, or that he used the money received from the property for his own purpose, but that the same was used for the benefit of the cestui que trust. Printup amended his answer, and alleged that it was true that the property had been sold for taxes due the city of Rome, and that a marshal's deed had been made to him at said sale. He denied that he caused the property to be sold, or changed the assessment, but alleged that if the title had never been legally devested from Perkins, trustee, it was now in him by virtue of this tax sale, and that, if complainants' claim for the property was sound, the complainant should have paid all taxes on the property from the time of the purchase by defendant to the present time, but, on the contrary, he (Printup) had paid all of the taxes, and, if he should now be decreed not to be the owner of the property, he was entitled to recover the same, with interest. The case thus made went to trial, and on the 21st day of July, 1876, a verdict was rendered, as follows:

"We, the jury, find that the sale of the property in dispute by Jas. P. Perkins, trustee, to D. S. Printup, the deft., was unauthorized, and that the deed of said trustee to the deft. be annulled and set aside, and that the deft. convey said property to a trustee to be appointed by the court in the stead of said Jas. P. Perkins, to be held subject to the trusts specified in said deed of Wm. R. Smith, and free from all claim of the defendant. We also find in favor of the defendant the sum of one thousand dollars, to be paid by the first day of Dec. next, with interest, and, in default of payment by said date, that execution then issue for said sum against said trust property in favor of said deft."

On this verdict, on the same day, a judgment was entered, as follows:

"Whereupon it is adjudged and decreed by the court that the said deed of Jas. P. Perkins, trustee, to the defendant, D. S. Printup, be annulled and set aside, and that the defendant, D. S. Printup, do convey the said trust property in said deed and in this bill described to Wm. A. Wright, who is hereby appointed by the court to be trustee of said property in the stead of said Jas. P. Perkins, who is hereby removed, to hold said property for the purposes, and subject to the trusts, in said deed of Wm. R. Smith set forth, and free from all claims of the defendant, D. S. Printup, thereon. It is also decreed that the defendant, D. S. Printup, do recover of the said trustee, to be levied of said property, the sum of one thousand dollars, to be paid by said trustee by the first day of December next, with interest from this date, or, in default of payment by that date, that execution do issue therefor, with interest thereon from this date. It is further decreed that the costs in this court, except the witness' fees, be paid by the parties mutually, each party paying his own witnesses; and that this decree operate as a special lien and first charge on said property, in preference to all other liens or charges."

On the 7th day of January, 1878, said sum of $1,000 not having been paid, fi. fa. was issued from the superior court of Floyd county directed to the sheriffs of the state, commanding them to make of the property described hereinbefore the sum of $1,000, with interest thereon since the 21st day of July, 1876, by virtue of the decree aforesaid. The property was duly levied on upon the 7th day of January, 1878, and was duly advertised and sold on the first Tuesday in February, 1878. Daniel S. Printup was the purchaser of the same for $800, he being the highest and best bidder, whereupon the sheriff of Floyd county made and executed to Printup his deed to the property. In 1887 Daniel S. Printup conveyed the property to the present complainants. James P. Perkins is dead, and left the following children and descendants of children: Mrs. M. A. E. R. Hill (formerly Perkins), Mrs. H. E. Wallace, James W. Perkins, and Royal Perkins, now deceased, but who left a son, W. R. S. Perkins, and his widow, Mrs. Mabel R. Perkins, who are his heirs at law. W. R. Smith died in 1860, leaving his wife, Annie E. Smith, and no children, and said Annie E. Smith has since died.

The bill alleges that as in Georgia, since 1866, a woman remains a femme sole, although married, that since the majority of said Mary A. E. R. Perkins (now Hill) she has needed no trustee, and that the trust created in Perkins has been executed. The bill then alleges that the deed from Smith to Perkins, trustee, conveyed an estate tail, and that by virtue of the laws of Georgia that which would have been such an estate at common law became an estate in fee simple, and that after the execution of the trust the title vested in said Mary A. E. R. Perkins absolutely in fee simple. The bill further alleges that the said descendants and children of James P. Perkins, other than the said Mary A. E. R. Hill, claim that upon the death of said Mary, who, as has been alleged, is a widow and childless, they will be entitled to a fee-simple estate in the property in question, and that complainants have endeavored to sell said property, and that they have found that the claims of said children and descendants of children of Perkins are and operate as a cloud upon their title, and render it impossible for them to dispose of or use as security the property in question, and they charge that such claims do operate as a cloud upon their title to the property. The

prayers of the bill are:' (1) That it be decreed that the deed from Smith to Perkins, as trustee for Mary A. E. R. Perkins and her heirs, conveyed an estate in fee simple for the benefit of said Mary; and that, upon the said Mary obtaining her majority, the trust became executed, and an estate in fee simple to the property in the deed described became vested in her; and that the further limitations in the deed contained, in default of issue, on the death of the said Mary, were of no effect, null, and void. (2) That it be decreed that, at the time of the rendition of the decree in the case of Mary A. E. R. Hill and H. B. Hill against D. S. Printup, under the terms of the deed from W. R. Smith to James P. Perkins, trustee, the said Mary A. E. R. Hill held the title in fee simple to the property described. (3) That the amount adjudged in favor of the defendant, D. S. Printup, in said decree, and decreed to be paid out of the trust estate, bound the entire fee-simple title in said property, and that the sale thereof under the conveyance made by the sheriff in pursuance of the sale conveyed to Printup an absolute fee-simple title to the property. (4) That orators are respectively the owners in fee simple of the respective pieces of property described in the bill as conveyed to them. (5) That the defendants, and none of them, have any right, title, or interest in and to the property in controversy, or any part thereof. (6) For general relief. The case as now before the court presents for determination—First, the construction of the language of the deed from Smith to Perkins, which has been quoted, and the character of the estate which Mary A. E. R. Perkins (now Hill) took under same; second, whether, in any event, the title acquired by Printup by the sheriff's deed and the decree and sale in the case of Hill against Printup gave Printup a good fee-simple title, even if he had not obtained the same before.

As to the first question stated above, namely, as to the character of estate which Mary A. E. R. Perkins took under the deed from Smith to Perkins, trustee, it is conceded by counsel for all parties that it was either an estate tail, which, by operation of law in Georgia, became a fee simple, a qualified or base fee, which, being an attempt to limit a fee on a fee, would have been obnoxious to the law of Georgia at the time the deed was made, or a life estate only in Mary A. E. R. Perkins, with remainder as provided in the deed. I am satisfied that the language of this deed is not such as to create an estate tail. Indeed, the learned counsel for the complainants, while urging with some plausibility that the language of the deed had this effect, was frank enough to admit that as to the position thus taken he had considerable doubt. Even allowing that the words "her heirs" were qualified or limited, or given meaning, rather, by the subsequent words, "in default of issue on the death of the said Mary," so that the word "heirs" would mean issue or children, still, with this construction given, it would not create an estate tail with the necessary results under our statute. The language used contemplates a definite, and not an indefinite, failure of issue; that is to say, the language is, "in default of issue on the death of the said Mary A. E. R. Perkins." See Acts Ga. 1853–54, p. 72 (Civ. Code 1895, § 3086).

In the case of Burton v. Black, 30 Ga. 638, 640, Judge Stephens, in an opinion for the court, discusses this question and determines it in this language:

"If property is given to A. for life, and, if he shall die without issue, then over to B., the issue of A. are the persons whose existence is to prevent the property from going over to B.; and the just inference is that the 'issue,' without further description, are intended to take it. But if property is given to A. for life, and, if he shall die 'without issue living at his death,' then over to B., the issue of A. 'living at his death,' are the persons who are to prevent the property from going over, and the just inference is that only such issue are intended to take it as shall be living at A.'s death. Here, there is no estate tail, for 'issue living at the death of A.' cannot embrace persons in future generations. These two extreme cases clearly illustrate the principle on which the intention to create an estate tail is reached by implication, or, more properly, by inference."

This language illustrates the indefinite or definite failure of issue as affecting the question. In the case which Judge Stephens was discussing (Burton v. Black), the fourth item of the will which was being construed gave the property to Benjamin, and then the fifth declared that it should go over to Robert if Benjamin should die without children. Discussing the language of this will particularly, the judge says:

"Now, if this were a case (as I shall presently show it is not) where it is allowable to draw an inference as to who is intended to take the property, from a designation of those who are to prevent it from going over, the utmost inference would be that at the death of Benjamin his 'children' are to take, if any, and, if not, then Robert is to take; that is to say, it would be an estate to Benjamin for life, remainder to his children, if any, but, if none, then to Robert. Can this possibly be made an estate tail? Benjamin, and, after him, his children, are the persons, if any such there be, who constitute a class having succession from generation to generation, until the blood is exhausted. The term 'children' does not describe any such class. In its proper sense it includes only the next generation to Benjamin, and to make it include more there must be something in the will (as there is not) to show that it is used in a broader sense. There are many books which say that the term must be also extended so as to include others, when there are no children proper to whom it can apply; but Mr. Jarman denies the principle, and denies that it is sustained by any well-adjudicated case. For my part, I think Mr. Jarman is right. But, even if the principle be conceded, it never extends the term 'children' beyond such representatives of children as are in life when the time arrives for children to take; that is to say, 'children' in this case can include only children proper, or, in default of these, such representatives of children as were in life at the death of Benjamin. The persons who take under the description of 'children,' in the largest possible sense of the term, must all be in life at the death of Benjamin. The conveyance exhausts itself on a single generation, and creates nothing which bears a resemblance to an estate tail."

In the present case, allowing that the word "heirs," in view of the subsequent language used, meant "children," the apt language of Judge Stephens last quoted is, to my mind, a complete answer to the argument that the effect of the instrument was to create an estate tail. It may be remarked that in one portion of the opinion it is stated that "the fourth item of the will gives the property to Benjamin Burton, the son of the testatrix, and, as no less estate than a fee simple is expressed, that item creates a fee simple in Benjamin. This rule of construction, which makes every estate a fee simple unless a smaller one is expressed, is derived from that

very act of 1821 which is invoked to defeat this limitation over." Acts 1821 (Cobb's Dig. p. 169; Civ. Code 1895, § 3083).

Referring still further to the case from which the foregoing extracts have been given, I think a further quotation will admirably illustrate what I have endeavored to state:

"The Case of Troup's Will, 30 Ga. 496, will clearly illustrate this restriction, and the importance of it in arriving at the true intention of testators. That will makes a gift to George M. Troup, Jr., and his heirs,—a fee simple,—with the exception that, if he shall die 'without lineal descendants,' it shall then go over. It was contended in that case that, as the 'lineal descendants' were to prevent the property from going over, they were intended to take it, and that that intention made it an estate tail; lineal descendants constituting a class which has succession from generation to generation. Such an inference is opposed to the clear words of the will, for the will makes full provision for two events, one or the other of which was obliged to happen, and its provisions, therefore, are perfectly exhaustive of all contingencies, leaving no room for inference. One of these two events is the first taker's dying without lineal descendants, and the other is his dying with them. These two exhaust the possibilities, and there is a full provision for each of them. The estate of the first taker is to be a fee simple, excluding lineal descendants and everybody else, filling the whole field, and leaving no room for anybody but the first taker, with his absolute and perfect dominion over the property during life, and after death, unless he shall die without lineal descendants. If he dies without lineal descendants, the property is to go over, but, if he dies with them, the property is to be in the situation just described,—is to constitute a fee-simple estate in the first taker to the exclusion of everybody else. This will disposes of the whole estate in all possible contingencies, by express words, excluding all occasion or place for inference."

This well-considered case is sufficient authority upon this point.

The question remains as to whether or not the language of this deed created a life estate in Mary A. E. R. Perkins, with remainder over to Perkins' other children, etc., or whether the estate she took was a conditional or defeasible fee. The property in controversy is Georgia land, and the instrument is a Georgia deed, so that of course it is controlled by the decisions of the supreme court of this state. While many cases pertinent to this question might be cited from decisions of the supreme court of the state, I shall content myself with referring to a few. Upon this question, also, the case of Burton v. Black, 30 Ga. 638, 640, is authority. That will gave certain property to Benjamin, but provided that it should go to Robert if Benjamin should die without children. While the greater part of the opinion in this case is directed to the question which has been hereinbefore discussed,—as to whether the language used created an estate tail,—the court concludes and determines that "the estate is to be just what the fourth item leaves it, a fee simple in the first taker, unless he dies without children. * * * The estate is a fee simple determinable upon condition."

The next case which need be considered is the case of Wetter v. Cotton-Press Co., 75 Ga. 540. In that case the estate created was by will, wherein the testatrix provided that her daughter, "should she live to attain the age of twenty-one years, become then the absolute owner of all the estate, real, personal, and mixed, including choses in action, to which I have a lawful title, to have and to hold the same, and her heirs, forever." In the next item of the will she provided "that if my said daughter should depart this

life leaving no issue or lineal heirs, that the whole of the estate herein bequeathed should go and belong to my mother and my sister, as tenants in common, and their heirs, forever; and should they two be survived by my said daughter, and she, my said daughter, subsequently die without issue, as aforesaid, then living, then it is my will that the whole of my estate vest in and belong to my own next of kin then living and their heirs, forever." The supreme court in this case held that this language created an estate for life in the daughter of the testatrix, with remainder to her children or lineal heirs, or, in default of such issue or lineal heirs, to the other beneficiaries named; it did not invest the daughter with the fee at her majority, determinable upon her dying without issue. If the decision in this case is to be followed, the instrument now before the court should be held to create a life estate. The language of the will in that case unquestionably presents as strong a case for a conditional or defeasible fee as does the language of the deed in this case. But is that case controlling?

In the case of Matthews v. Hudson, 81 Ga. 120, 7 S. E. 286, it was held that:

"A devise made in 1854, by a mother to a trustee for her son, and, if the son should die without child or children, the trustee to sell and make an equal distribution of the proceeds of sale, and place the same in the hands of another trustee for the other children of testatrix, created in the son a fee, determinable upon his dying without a child or children, and the other children were intended to take by executory devise, and not by contingent remainder, and no remainder was created by implication in the child or children of the son."

As supporting this conclusion, Chief Justice Bleckley, delivering the opinion of the court, referred to Groce v. Rittenberry, 14 Ga. 233; Harris v. Smith, 16 Ga. 545; Hill v. Alford, 46 Ga. 247; and Gibson v. Hardaway, 68 Ga. 370. As to the Wetter Case, just referred to, the chief justice said:

"Though not read or cited in the argument, our attention has since been called to Wetter v. Cotton-Press Co., 75 Ga. 540, a case which at first view seems directly in point, and the devise construed is apparently in some respects stronger for a base fee than the one now under consideration; yet the court held that only a life estate was created in the first taker, and that the subsequent limitation implied a contingent remainder in favor of children, with remainder over in the event that failed."

Some reasons are then given why the decision in the Wetter Case should have been made as it was, and the chief justice concludes:

"Whilst, if Wetter v. Cotton-Press Co. is a sound adjudication, there may be some doubt as to the correctness of our ruling, we think the judgment denying the injunction in the present case ought to be affirmed. It is conceded that, if Hudson took a fee of any sort, he is exempt from the supervision of chancery in respect to waste, and such undoubtedly is the law. We think he took a qualified fee."

There has been some discussion between counsel as to what effect this last decision had on the Wetter Case,—as to whether it overruled it or allowed it to stand. The chief justice says, of the device considered in the Wetter Case, that it "is apparently in some respects stronger for a base fee than the one now under considera-

tion," and yet he subsequently holds that the one then under consideration is a qualified or base fee. The conclusion seems inevitable that the court in the last case differs with the conclusion reached in the Wetter Case.

In the case of Greer v. Pate, 85 Ga. 552, 11 S. E. 869, the instrument under consideration (a deed) gave "unto my said daughter Harriet Thompson Ferrell, and her child or children, should she be the mother of any, free from and not subject to the control, debts, contracts, or liabilities of any kind whatever of her present husband or any future husband she may have; and should my daughter Harriet Thompson Ferrell depart this life leaving neither children, grandchild, nor grandchildren, then in that case the above and foregoing tracts or parcels of land shall belong to and be divided among my heirs, part and part alike." As to the effect of this grant, the court, in the opinion by Judge Blanford, says that:

"Treating deeds and wills as on the same footing before as well as since the Code, Mrs. Ferrell, under this deed from her father, took a base or qualified fee, as was decided by this court, in an almost similar case,—Matthews v. Hudson, 81 Ga. 120, 7 S. E. 286. See that case and the authorities there cited. She, having no child or children at the time, took a fee, subject to be devested upon her dying without child or children or grandchild or grandchildren."

This latter case seems to be a clear reaffirmance of Matthews v. Hudson and of the authorities there cited, and to leave the Wetter Case standing alone, and not in harmony with the general line of decisions of the supreme court.

I have no doubt that the effect of this deed from Smith to Perkins, trustee (leaving out the matter of the trust, which is not material here), put in Mary A. E. R. Perkins a fee-simple title to this property, subject to be defeated or determined should she die without issue. Mrs. Hill dying with issue, the estate left would be an absolute and unconditional fee simple. If this conclusion is correct,—that the estate created was a conditional or base fee,—the effort to create a remainder after it failed because prior to the Code (this deed was made in 1857) a fee could not by deed be limited on a fee. Cook v. Walker, 15 Ga. 457; Greer v. Pate, 85 Ga. 552, 11 S. E. 869. See, also, 4 Kent, Comm. 199, 200. Since the adoption of the Code, of course this can be done. Civ. Code 1895, § 3082.

In view of the very able argument of counsel in this case as to the proper construction of this instrument, and of the importance of the question, I have thus given my views as to the character of the estate created by the deed in this case. In my opinion, however, the case is controlled, and the title to the property in question determined, by the sale under the judgment and execution in the case of Hill against Printup. The only difficulty suggested by counsel for the defendants is that those who claim to have been remainder-men in this deed were not served. I do not think this was necessary. Schley v. Brown, 70 Ga. 64. The record shows that the judgment in favor of Printup was for taxes paid by him, and that it was against the property. A trustee was appointed, and the language of the appointment showed that he was made trustee for

the entire estate in the property. The language of the decree is, "William A. Wright, who is hereby appointed by the court to be trustee of said property." Even assuming that there was a remainder interest in this property, while, as between such remainder and the life tenants, the life tenants may have been liable for the taxes accruing during their tenancy, still the tax itself would be against the property, and neither the state, county, nor city could be deprived of the tax for the support of the government because of the peculiar situation of the title. Pol. Code 1895, § 778. "Taxes due the state are not only against the owner, but against the property also, and that without reference to judgments, mortgages, sales, transfers, or incumbrances, of whatsoever nature or effect. The only concern as to an owner at all is merely to know against whom the assessment is to be made, whilst the tax itself and the lien therefor are against the property. The state's lien for taxes overrides all others, and follows the property into the hands of whomsoever it may go." Verdery v. Dotterer, 69 Ga. 194. See, also, State v. Hancock, 79 Ga. 799, 5 S. E. 248; Barnes v. Lewis, 98 Ga. 558, 25 S. E. 589; Dawson v. Dawson, 106 Ga. 45, 32 S. E. 29.

The suit by Hill was to recover the property from Printup, and, if the position is correct that Mrs. Hill's brothers and sisters are remainder-men, they got the benefit of that suit in recovering the property from Printup, and they must bear the burden placed on the property by the same decree. Whether, therefore, the conclusions reached and expressed above as to the construction of the language of the deed from Smith to Perkins are correct or incorrect, I am satisfied that Printup acquired a good title by his purchase at the sheriff's sale. No question is made of the proper transfer of the property by Daniel S. Printup to the present complainants. The demurrer will be overruled.