WILLIAMS *v.* RAMEY *et al.*

No. 15668. JANUARY 7, 1947.

738

*R. F. Duncan,* for plaintiff.

*Marvin A. Allison* and *Charles C. Pittard,* for defendant.

JENKINS, Chief Justice. (After stating the foregoing facts.) There may be some question under the authorities as to whether or not a mere possibility of reverter in property is such an interest as will warrant injunctive relief to prevent the creation of an easement upon the corpus of an estate. See *Matthews* v. *Hudson,* 81 *Ga.* 120, 129 (7 S. E. 286, 12 Am. St. R. 305), Mitchell on Real Property in Georgia, p. 186, and 31 C. J. S., "Estates," 126, § 105; all of which indicate that such an interest does not warrant injunctive relief. See, however, Restatement of the Law, "Property," 793, § 193, and the following Georgia cases: *Griswold* v. *Greer,* 18 *Ga.* 545; *Kollock* v. *Webb,* 113 *Ga.* 762 (39 S. E. 339); *Keaton* v. *Baggs,* 53 *Ga.* 226; *Fleming* v. *Hughes,* 99 *Ga.* 449 (27 S. E. 791). These cases might by analogy possibly indicate a different rule. It will be noted, however, that the last-mentioned cases deal with contingent remainder interests, and therefore may not be in point. Under the facts of this case, it seems really unnecessary to determine this question or the other legal propositions presented by the

record, for the reason that the use by the church of a portion of the one-acre tract of land which it holds in fee (subject only to a pos-·sibility of reversion) as a burial ground is, as we view it, an authorized. use under our construction of the term, "religious purposes," as applied to churches in rural communities.

One of the functions of any church is to observe religious rites and pay religious homage to its dead. In the great cities the "churchyard," like that of Trinity, surrounded by the towering skyscrapers of New York City, stands as a mute memorial of the past. But even in the churchyard just mentioned lie the undesecrated bones of Alexander Hamilton and other fathers of our country, who lived much and who gave much, and who were put away secure in the faith that the hallowed ground of their "narrow cell" would never be disturbed. In rural communities, the "country church yard" still has its solemn and important part in religious activities. These churches are far removed from the secular cemeteries, and the even more pretentious commercial mausoleums now in vogue. The immortal "Elegy Written in a Country Churchyard" lives on in the hearts of humanity largely because it spoke for its own present, its own past, and for all time to come. So long as rural communities shall continue to exist, it will doubtless be the wish and desire of the faithful to be put away within the precincts of the living church which personified the faith that was in them. They should not be denied this hope and privilege merely because some grantor, in deeding to the church its land, may have sought to look into the seeds of time by providing for a reversion to himself or heirs in the event that the church should ever cease to exist or should be used for other than religious purposes. We can hope that all of our churches will live and will continue always to prosper. While they do, let them function in all of their sacred rites and ways, including the right to take within the bosom of themselves the mortal remains of those who in life had nurtured them.

Under the foregoing ruling, the verdict in favor of the church was demanded, and therefore it becomes unnecessary to deal with the questions presented by the special assignments of error.

*Judgment affirmed. All the Justices concur.*