## OSBORN *vs.* ELDER.

1. The following is too uncertain to be a levy in legal contemplation: "Levied this *fi. fa.* on one hundred and twenty-six acres of land as the property of M. O. Elder.   This January 13, 1877.
[Signed]                          "A. CROW,
                              "County Court Bailiff."

2. The principle that one who by his acts or omissions has induced another to change his circumstances, without fault on his part, is estopped, applies to all sales, and this whether without such conduct the purchaser would have acquired a good title or not.

Levy and sale.   *Caveat emptor.*   Estoppel.   Before

Judge ERWIN. Oconee Superior Court. July Term, 1880.

Reported in the decision.

LAMAR COBB; LYLE & KINNEBREW, for plaintiff in error.

POPE BARROW, by GEORGE D. THOMAS; E. K. LUMPKIN, by JACKSON & LUMPKIN, for defendant.

HAWKINS, Justice.

On the ninth day of July, 1879, William I. Elder brought his action of ejectment against A. C. Osborn in the superior court of Oconee county, to recover 126 acres of land, to which the said Osborn pleaded not guilty, and at the July term of Oconee superior court amended his plea of the general issue (or plea of not guilty) as follows: That he bought the land at sheriff's sale on the first Tuesday in March, 1877, under an execution in favor of S. C. Dobbs against M. O. Elder and J. L. Elder, without any notice of any defect in the title or any notice or knowledge of any irregularity in the process under which it was sold. That the plaintiff, W. I. Elder, was present at said sale and did not forbid the same and did not take any steps to prevent it; but was silent, knowing well that the land so bid off was sold as his land, perhaps intending to say his brother's land. The defendant paid a valuable consideration for said land and is a *bona fide* purchaser, without notice of any defect in the title. Defendant therefore insists that the said plaintiff is unquestionably estopped under the facts of this case, etc.

The case went to trial upon the foregoing issue and the following evidence was had on said trial: The plaintiff submitted a deed from John Elder, his father, dated in 1868 and proved possession in the father for a period of

over twenty years.    Upon this proof the plaintiff rested.

The defendant showed his sheriff's deed, the *fi. fa.*, levy thereon, and proved that the sheriff had put him in possession under the sale.    The following is the language of the levy entered on the *fi. fa*: "Levied this *fi. fa.* on 126 acres of land as the property of M. O. Elder.    This January 13th, 1877."    Signed by the county court bailiff.

The plaintiff in ejectment testified that he was present at said sale, went to sheriff before sale, asked what land was referred to in the advertisement, sheriff said he did not know, he did not make the levy—knew nothing about it—then went to Thrasher, attorney representing the execution which sold the land, asked him same question, said he knew nothing about it—all he wanted was to get the money.    He could not find out what land was levied upon.    May have been present when land was sold—did not know when it was sold—he is deaf.    Told them if it was the land on which Buryer was living it was his land. Osborn swore that he bought the land at sheriff's sale, paid two hundred and five dollars for it—that Elder was present at the sale standing within a few feet of the sheriff when the land was being sold and defendant was bidding for the same—was near enough to see and hear what was going on and was perfectly silent—he interposed no objection to the sale, before the sale nor until the same was by sheriff's deed conveyed to witness    He knew nothing of his (Elder's) claim to the land, but believed it was the property of M. O. Elder, the defendant in *fi. fa.*    He bought in good faith and had no notice of any kind from anybody of any defect in the title.

Osborn also proved by the sheriff who sold the land, that Elder called on him the morning of the sale and before the land was sold, and asked him if he was going to sell any and what land.    He did not know as he had not made the levy, when Elder said if it was the land Buryer lived on it was his land, and wanted witness to tell him when he got ready to put the land up, which witness

agreed to do, knowing that Elder could not hear very well. When the sale occurred Elder was near by, within a few feet of witness, and he read aloud the advertisement—he thinks Elder heard it—was looking at witness when he read the advertisement and cried the sale. He .is satisfied Elder heard it.

Other evidence of a contradictory nature was submitted as to the title of Elder from his father and its *bona fides*, not here important to the adjudication of the questions involved.

The judge, among other things, charged the jury that if Elder, the plaintiff in ejectment, stood silently by on the day of sale and permitted Osborn to purchase the property in dispute without disclosing his title, he, Elder, would not be guilty of such a fraud as would estop him from subsequently setting up his title against Osborn, unless the sheriff had authority to sell. He further charged, that in order to bind Elder, he must have done some act that mislead Osborn and induced him to purchase the property.

The judge in a note to the charge says: " the above recitals of the charge of the court are incorrect. In the first place, the court charged the jury that the levy in this case was void and there could be no legal sale under such pretended levy, and that the plaintiff would be entitled to recover unless his conduct at the sale had been such as to estop him from now asserting his title. The court further charged the jury that the purchaser at a judicial sale was bound to see that the officer had authority to sell; that an essential part of this authority was the levy or seizure, which in the case of real estate was the officer's entry of levy, since that was the only levy or seizure of which the subject matter was capable, and if the officer did not have authority to sell, the mere presence of the plaintiff at the sale, and the fact that he did not assert his title and forbid persons from bidding, would not estop him from asserting his title in this action

v 65—24

against the purchaser at said sale, unless he had done something to prevent the purchaser from looking into the authority of the sheriff to sell, or his conduct had been such as to mislead the purchaser on *this point* and induce him not to make the investigation as to the sheriff's authority, which otherwise he would be bound to make."

Upon the foregoing evidence and charge of the court, the jury found a verdict for the plaintiff.

The plaintiff in error made a motion for a new trial upon the grounds that the court erred in charging the jury that the levy was void and charging the foregoing as the law of the case.

1. We are of opinion the levy was too uncertain—in fact was no levy in legal contemplation, and that the court committed no error in so charging.

2. In reference to the rulings of the judge in the remainder of the charge we are not able to arrive at the conclusion in said charge as to the doctrine of estoppel. The decision of the judge seems to rest upon the fact that the levy in the case was void, and the purchaser was bound by the maxim of *caveat emptor*—that if the levy had been a sufficient one and the plaintiff had induced the purchaser to invest his money, then he would have been estopped, but the same conduct on the part of the plaintiff at a sale under a void levy and by which a purchaser was deceived and misled would not estop him except where the fraud prevented inquiry as to the authority of the sheriff to make a valid judicial sale. We think the distinction of the judge as to acts and conduct amounting to estoppel, between void, voidable, and valid sales, does not exist except perhaps as to such sales as are contrary to public policy and adhorrent to law, such as for usury, etc., but the principle that a man shall not be allowed to assert a contrary right to one who by *his* acts or omissions has been induced to change his circumstances without fault, and being induced so to do by the other, applies to all sales, and this whether without such conduct the purchaser would obtain a good or bad title.

When Elder sought to recover this land from Osborn upon the title he exhibited, it was competent to show that Osborn was misled by the plaintiff and changed his situation, invested $205.00 in good faith — and if he showed that fact, then Elder could not assert the contrary, and whether Osborn had a valid title to the land, or whether the sale was good or void, was immaterial to maintain his possession against another title now sought to be enforced by Elder. His possession was quite sufficient to protect him from a recovery by Elder if his silence and conduct at the sale amounted to fraud.

We conceive that mere personal silence when an act is about to be performed affecting rights would be less convincing than an authority or positive consent to the doing, but neither would create an estoppel unless fraud was an element and both would not in the absence of fraud.

The direction of the court confined the estoppel to the knowledge of the purchaser as to the legality of the sale and the conduct of the said Elder in misleading Osborn upon the authority of the sheriff to sell, and excluded from the consideration of the jury whether (considering the sale to be void), the conduct of Elder, his presence and silence induced Osborn to purchase to such an extent that it was a fraud upon him to assert the contrary, and if so then he was estopped, otherwise he was not.

We reverse the ruling of the court on its charge to the jury and grant a new trial. See Rorer on Judicial Sales, pages 193, 457.

Judgment reversed.