## DAWSON *v.* DAWSON *et al.*

1. Where property has been duly sold under a tax fi. fa. against one who returned the property for taxes and who was in possession thereof, such sale is not invalid because the property did not belong to the defendant in fi. fa. but to his minor children, nor because the fi. fa. included taxes upon other property that did not belong to the minors. If the property is not redeemed within twelve months from the date of the sale, the purchaser gets a good title as against the real owners.
2. Counsel for plaintiff in error is not relieved from liability for costs in this court, when the affidavit in forma pauperis does not indicate where it was executed, and does not show that the officer attesting the same was authorized to administer the oath.

Argued October 20, — Decided November 25, 1898.

Equitable petition. Before Judge Butt. Muscogee superior court. May term, 1898.

By a voluntary deed dated and recorded Dec. 26, 1876, Elijah Dawson conveyed certain land to his minor children, Mary, Isaac, Henry, and Adolphus. He retained possession of the land and continued to live on it, with the children, returning it for taxation as his own, until his death, which occurred in 1896. On May 1, 1894, the land was sold under a general execution against him for State and county taxes for the year 1893, and a deed executed by the sheriff to the purchaser, the Queen City Real Estate Company. The tax return of Elijah Dawson for 1893 embraced other property besides this land. There was no effort to redeem the land, and on August 12, 1895, the purchaser sold and conveyed it to Matilda Dawson. After the death of their father, Isaac, Henry, and Adolphus, for themselves and as next friends of the minor children of their de-

·ceased sister Mary, five in number, brought suit against Matilda Dawson for the recovery of the land and mesne profits, and asked that any sum paid by the defendant for taxes on the premises in dispute, under execution or otherwise, be deducted from the mesne profits.    On the trial the jury rendered a verdict for the plaintiffs, upon the payment to the defendant of fifty dollars.    Defendant's motion for a new trial was overruled, upon plaintiffs writing off from the verdict and judgment the undivided interest of Alfred Trent, the husband of Mary Dawson, in the premises.

The motion for a new trial alleged, among other grounds, that the verdict was contrary to law and the evidence, and that the court erred in charging the jury:    (*a*)  "At all tax sales, like all other judicial sales, the purchaser gets nothing more or less than the title that the defendant had.  .  .    The Queen City Real Estate Company got no greater title than Elijah Dawson had at the time of the sale.    If he had no title to this property, then the purchaser got no better title, nothing more nor less than what he had at the time."    (*b*)  "If Elijah Dawson was in possession of this property and he gave it in and failed to pay the taxes, and he had other property at the time, together with this property, a general judgment against him and a sale thereunder, the purchaser at that sale would not have gotten a good title unless the execution was issued against this property, or it was embraced against this property, together with other property, though sold at the time as the property of Elijah Dawson."    (*c*)  "The next question is, were these parties minors at the time this property was sold?    You are to determine that question from the testimony in this case.    If they were minors and had no legal representative, then they would not be bound by this sale, or if they were non-residents and had no knowledge of it, they would not be bound by this sale."    (*d*)  "If this was a regular sale under the rules of law I have given you in charge, and the Queen City Real Estate Company purchased the property and they held it for over twelve months and these complainants failed to redeem the same with a full knowledge of · that fact, then the Queen City Land Company, after twelve months had expired, obtained whatever title Elijah Dawson

had at the time, and they had a perfect right, after twelve
months elapsed, to make a title in Matilda Dawson or any one
else they saw fit."

*Brannon, Hatcher & Martin*, for plaintiff in error.
*C. J. Thornton* and *A. E. Thornton*, contra.

SIMMONS, C. J. 1. The decision in the case of *State* v. *Hancock*, 79 *Ga.* 799, followed in *Barnes* v. *Lewis*, 98 *Ga.* 558, fully
covers the law and facts in this case. The reasoning in the
decision in that case also applies to this; and the principle announced therein is the same as that involved in the case under
consideration. In the *Hancock* case a claim was interposed by
the true owners. In this case there was no claim, but a sale
made under a tax fi. fa. by the sheriff, a purchase by a third
party, and a suit by the true owners to recover the property.
Here the father had given this property to his children, remained in possession for years, and returned the property to
the tax-receiver as his own. This court held, in the *Hancock*
case, that "it is not incumbent upon the State or county to investigate the legal title to property before assessing the same.
The only duty of the tax-receiver of the State and county in
regard to this matter is to see that all the property, not exempted as above set out, is returned by some one. If it is not
returned by the legal owners, as in this case, but is returned by
the husband and father while in possession, the State and
county are entitled to the taxes thereon, and if the taxes are
not paid by the person who returns the property for taxation,
nor by the legal owner thereof, the tax-collector, finding the
return of the property on the receiver's digest, has a right, indeed it is his duty, to issue execution against the person who
returned the same, and have it levied thereon." It was also
held that if the person making the return returned this property of which some belonged to his children and some to himself, it was the duty of the children to pay the taxes on their
property so returned by the father, and that, if they did not
do so, the property should be sold. The record shows that it
was sold, purchased by a third party, and not redeemed by the
children within twelve months as the statute requires. Whether

they were minors or adults at the time of the sale does not matter, so far as redemption is concerned. The statute makes no exception in favor of minors for redeeming property sold under a tax execution.

2. The law allows the losing party in the trial court, if he wishes to have alleged errors therein reviewed in this court, and is unable to pay the cost, to file an affidavit in forma pauperis of his inability. That affidavit is filed in the office of the clerk of the trial court, and a certified copy is transmitted to this court as part of the record. The record in the present case contains what purports to be a pauper affidavit, signed by the plaintiff in error. The writing states that she is unable to pay the cost. It purports to be attested by one T. W. Bates, notary public. There is nothing on or in the paper to indicate where the alleged affidavit was made, what county or State. If the venue had been stated as Georgia, Muscogee county, we would have inferred that Mr. Bates was a commercial notary public in that county; but as it fails to give the venue, we can not take judicial cognizance that Mr. Bates is an officer authorized to administer an oath. No affidavit having been filed as required by law, the statute requires the plaintiff in error or her counsel to pay the cost. Counsel appealed to us to remit the cost, on the ground of the poverty of the plaintiff in error and the fact, he says, that Bates was a notary public in Muscogee county. While we would be glad to relieve counsel, in every case of this kind, from the payment of the cost, we can not disregard the law which requires them to pay it. Appeals of this kind have become very frequent of late years, in this court. Counsel, through oversight or negligence, fail to prepare these affidavits according to the law; and then appeal to us to remit the cost. All the costs of this court belong to the State. They are appropriated to the payment of the salaries of certain officers, if they amount to the sum paid them. If they are not sufficient to pay these salaries, the deficit is paid out of the State treasury. If they amount to more than sufficient, the excess is turned into the treasury. The State, by its law, remits the costs when the plaintiff in error complies with certain prescribed regulations. These regulations have not been complied

with in the present case, and this court has no authority to remit the costs. The remission of these costs to pauper litigants is gratuitous on the part of the State. We regret to say that a great many litigants take advantage of the law when, in our opinion, they are really not entitled to its benefits. Many cases come before us where parties, excused under this law from the payment of costs, appear from the records to own and possess a considerable amount of property. We would respectfully recommend to the legislature that the law be so amended as not to allow parties to be themselves the sole judges of the truth of their affidavits of inability to pay the small amount of costs taxed in this court. We are the more impressed with the importance of this matter since the report of the clerk of the number of these cases on the present docket. This report shows that of the 497 cases so far returned to this term of the court, 177 are brought up by the plaintiffs in error who have availed themselves of the benefit of the law. The plaintiffs in error in more than one third of the cases brought to the present term are, according to this report and the affidavits filed by them, too poor to raise the small amount of ten dollars to pay for having their cases passed upon by this court. The sum of $1,770 is thus given by the State to these litigants at one term of the court.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*