DERANEY *v.* MAYS.

No. 16575.   March 16, 1949.   Rehearing denied March 28, 1949.

*W. E. Watkins, Benjamin B. Garland,* and *John R. L. Smith,* for plaintiff in error.

*Williams & Freeman,* contra.

WYATT, Justice. ■ The evidence in this case discloses the following facts with reference to the claimed titles of the respective parties: The plaintiff claims title by virtue of a deed executed by her husband in 1926 and recorded in that year. The defendant claims title by virtue of a tax sale for city taxes, made pursuant to tax executions in personam against J. B. Mays for the years 1928 to 1935, inclusive. Tax deeds, accompanied by the executions, entries of levy, and copies of advertisements were introduced in evidence. These deeds appear to be regular in every respect, with one exception. The executions were in personam against J. B. Mays and not Mrs. Martha S. Mays, who held a warranty deed to the property, duly recorded in the year 1926.

This case, we think, turns upon a consideration of the question of agency.

It appears from the evidence, some of which is quoted in the statement of facts, that shortly after the execution of the deed from Mays to his wife in 1926, creditors of Mays instituted a suit against him and his wife, and others to whom he had executed deeds, seeking to set these deeds aside as being fraudulent. This litigation pended for about ten years, and until a short time prior to the sale of the property to satisfy the city tax executions. The litigation terminated with the deed executed to Mays' wife being upheld, while other deeds executed to other

parties were set aside. Prior to 1926, Mays had paid all the city taxes on the property in dispute; and during the pendency of the litigation instituted by the creditors, he made payments of taxes on a part of the property in dispute. In the litigation instituted by the creditors of Mays, his wife, the present plaintiff, swore that Mays was her agent, collected the rents on the properties, and looked after the property for her. The undisputed evidence in the case was to the effect: that from 1926 to the date the property was sold for taxes, Mrs. Mays never paid any taxes on the property and never contacted the taxing officials; that Mays controlled and managed the property, contacted the taxing officials, and made payment of taxes thereon; that shortly prior to the sale, Mays went to the office of the Tax Receiver and Collector of the City of Jackson, selected several pieces of property he intended to buy, said that he didn't care anything about the rest of the property, and demanded that each piece of property stand good for the taxes on that piece of property, and that the property be segregated and sold separately, which was done; that Mays attended the sale, at which there were only two bidders, he and the City of Jackson, Mays bidding on and buying the parcels he wanted, and having deeds to a part of the property bought executed to his wife, and the city bidding on and purchasing the property not bid on by Mays. After the sale, neither Mays nor his wife ever attempted to exercise any control over the property; and thereafter the City of Jackson collected rentals on a part of the property. After the sale by the City of Jackson to the defendant, he thereafter collected rentals, made valuable improvements on the property, and was in the uninterrupted possession and control of the property from August, 1937, until the filing of the present suit in March, 1943.

On the trial, neither the plaintiff nor her husband, who were present at the trial, denied that he was, in his handling of the property, the agent of his wife. Neither took the stand to testify.

We think—under this undisputed evidence, showing, among other things, the exclusive control and management of the property in question by Mays for years, from the date he executed a deed to his wife until the date of the tax sale, with the knowledge and acquiescence of his wife, as well as the previous sworn admissions of the wife, unexplained or denied on the present

trial, to the effect that her husband was her agent in managing the property—that a finding was demanded that her husband was her general agent in the control and management of the property, and that such relationship existed at the time of the tax sale.

(a) The evidence establishing the agency of the husband for his wife, the tax executions issued against him in personam, subsequently to the transfer of title by him to his wife, were not invalid because not issued against the owner of the property.

Assessments for taxes on the property had been made by the city against Mays prior to the date he transferred title, and he had paid the taxes thereon. Subsequently to his transfer of title, he as the general agent of his wife continued to manage the property and to contact the taxing officials with reference to the property, and to pay taxes thereon. So far as the evidence shows, Mrs. Mays never notified the city of any change in the status of the title of the property, and never attempted to pay any taxes on the property. In the circumstances, the fact that the city in making an assessment made it against the agent of the true owner, instead of the owner, would not render the assessment and subsequent tax sale thereunder void.

"As a general rule, no property can be sold under a tax execution in personam as the property of the defendant therein, when the defendant has neither title nor possession *nor any right to represent the person who has it;* and a sale under these circumstances would be void as to the true owner." *Haden* v. *Atlanta,* 177 *Ga.* 869 (171 S. E. 703). Since it appears without dispute in this case that the execution in personam was against the person who had the "right to represent" the owner as general agent, and who as such was in the exclusive control and management of the property levied on, we think that the present case falls within an exception to the general rule which requires executions in personam to issue against the true owner. As recognized in the statement quoted in the *Haden* case, supra, tax executions may be valid though not against the true owner, and such executions have been held valid by this court on a number of occasions.

In *State* v. *Hancock,* 79 *Ga.* 799, 801 (5 S. E. 248), a man resided with his wife and daughter on lands to which his wife

and daughter held title. He returned the land and failed to pay taxes thereon. With reference to the validity of an execution in personam against him, this court held: "While it is true that the legal title to this house and lot was in the claimants, it is also true that it had never been returned by them for taxes in the years for which these executions were issued. They had allowed the husband and father to return it as his own. All the property, of whatever kind, in this State, unless expressly exempted by the laws thereof, or by the laws of the United States, is subject to taxation and must pay its pro rata part of the taxes for the support of the government, in whosever hands it may be, or whoever may return the same for taxation. It is not incumbent upon the State or county to investigate the legal title to property before assessing the same. The only duty of the tax receiver of the State and county in regard to this matter is to see that all the property, not exempted as above set out is returned by someone. If it is not returned by the legal owners, as in this case, but is returned by the husband and father, while in possession, the State and county are entitled to the taxes thereon, and if the taxes are not paid by the person who returns the property for taxation, nor by the legal owner thereof, the tax collector, finding the return of the property on the receiver's digest, has a right, indeed it is his duty, to issue execution against the person who returned the same, and have it levied thereon."

In *Dawson* v. *Dawson*, 106 *Ga.* 45 (32 S. E. 29), it was held: "Where property has been duly sold under a tax fi. fa. against one who returned the property for taxes and who was in possession thereof, such sale is not invalid because the property did not belong to the defendant in fi. fa. but to his minor children, nor because the fi. fa. included taxes upon other property that did not belong to the minors."

In *Barnes* v. *Lewis*, 98 *Ga.* 558 (25 S. E. 589), this court held: "Where a trustee having the title to realty returned it for taxation for a particular year in his own name, making no other tax return for that year, and the property was afterwards sold under a tax execution issued against him individually and based upon the return indicated, and, though not so appearing on the face of the execution, the 'property tax' included therein was in

fact the tax on this identical property, the purchaser at the sale, if the same was otherwise free from objection, obtained a good title as against the *cestuis que trust* represented by the trustee, and this is true, although the poll tax of the latter was also included in the tax execution."

This court, in *Hight* v. *Fleming*, 74 *Ga.* 592, held valid a tax fi. fa. in personam against J. F. Watson, though the execution issued against property owned by G. B. Watson, it appearing that J. F. Watson was the agent of G. B. Watson.

(b) Under the undisputed facts disclosed by the record, the plaintiff was estopped from attacking the validity of the tax sale. "The principle that one who by his acts or omissions has induced another to change his circumstances, without fault on his part, is estopped, applies to all sales, and this whether without such conduct the purchaser would have acquired a good title or not." *Osborn* v. *Elder*, 65 *Ga.* 360. In *Byars* v. *Curry*, 75 *Ga.* 515, 519, this court held: "There can be no doubt, under the facts of this case, but that Dumble was, and his administrator is, estopped from denying the legality and validity of the sale of this land. He pointed out the property to be levied on; he directed the sheriff to advertise and resell this property; he was present and bid at the sale. These acts estop him from saying that the sale is void."

We think it clear in the instant case that the acts and conduct of the plaintiff and her agent, as established by undisputed evidence, were sufficient to estop the plaintiff from denying the validity of the tax sale as against the City of Jackson and privies in title.

In view of the foregoing rulings, the evidence did not authorize the verdict; and the trial court erred in overruling the motion for new trial on the general grounds.

■ In view of the rulings in subsection (a) of the preceding division of this opinion, the trial judge erred in the following charge to the jury: "If you find the plaintiff is not estopped from maintaining this action, and the defendant does not hold title by prescription, then you are authorized to find the title to the land in dispute to be in the plaintiff." The effect of the charge was to exclude the defense that the defendant held title

to the property by virtue of a valid tax deed, and a subsequent purchase by the defendant from the purchaser at the tax sale.

■■ We have examined other special grounds, complaining of a failure to charge lengthy written requests, and we find them to be without merit, because these requests were either subject to the objection that they are argumentative, or not adjusted in their entirety to the pleadings and the evidence, or do not, as a whole, embrace sound propositions of law. Other complaints as to excerpts from the charge show no reversible error.

■ The final special ground of the motion for new trial complains of the exclusion of evidence. Quoted therein are four pages of the transcript of evidence, consisting of questions and answers, some excluded and some admitted, together with colloquies between court and counsel. It appears that counsel for the defendant was attempting to show certain acts and conduct of the plaintiff's husband at the tax sale, and prior thereto and after the sale, and the court excluded certain of the evidence, on the ground that agency had not been shown. It further appears that this evidence was offered before facts and circumstances showing agency were introduced in evidence. Under the circumstances, the trial court did not err in excluding the evidence, although it would appear that the evidence would have been relevant on the question of agency and estoppel, if it had been introduced at the proper time, after laying a proper foundation for its introduction.

*Judgment reversed. All the Justices concur.*